IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| METROPOLITAN REGIONAL COUNCIL OF CARPENTERS, SOUTHEASTERN PENNSYLVANIA, STATE OF DELAWARE AND EASTERN SHORE OF MARYLAND | : | CIVIL ACTION |
| v. | : | |
| ELLIOT-LEWIS CORPORATION | : | NO. 13-1658 |

MEMORANDUM

Bartle, J. August 16, 2013

Plaintiff Metropolitan Regional Council of Carpenters, Southeastern Pennsylvania, State of Delaware and Eastern Shore of Maryland ("union") has initiated this lawsuit against defendant Elliot-Lewis Corporation ("employer") under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate a portion of an arbitration award. The award was issued pursuant to a dispute resolution procedure contained in the parties' collective bargaining agreement. The employer counterclaimed for confirmation of the award. Before the court are the parties' cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

The following facts are undisputed. Defendant employer serves the function of labor broker at the Pennsylvania Convention Center ("PCC"). It hires, schedules, and assigns members of the various crafts to perform work for exhibitions and contractors at the PCC. Plaintiff union is one of six unions

that work with the PCC and represents carpenters employed by the employer, who perform labor work for exhibitions at the PCC.

The union and the employer are parties to the Philadelphia Exposition Service Contractors Association ("PESCA") agreement as well as the Customer Satisfaction Agreement ("CSA") between the PCC and various trade unions. While the CSA incorporates by reference the PESCA agreement, it also contains the following:

> The parties expressly agree that their respective collective bargaining agreements now in existence, insofar as such agreements apply to work performed at the Convention Center, are hereby amended by this Agreement and that this Agreement shall supersede any and all provisions of such collective bargaining agreements to the extent inconsistent herewith.

Section K of the CSA, entitled "Dispute Resolution Procedures," provides:

> 2. Resolution of Disputes Impacting Ongoing Work. To ensure the resolution of any such dispute with no disruption of work, the parties acknowledge and agree that the PCCA, through its designated representative, shall have the authority to render an immediate resolution of all such disputes of any nature in the course of the planning for and execution of a convention, trade show or other event, including without limitation jurisdictional disputes.
>
> 3. Appeal to Binding Arbitration. Once resolved as set forth above, an aggrieved party to a collective bargaining agreement shall be entitled to appeal the resolution pursuant to the dispute resolution procedures contained in such party's collective bargaining agreement, except for jurisdictional disputes which shall be resolved in accordance with the Expedited

> Jurisdictional Dispute Resolution Procedures set forth below.

The Jurisdictional Dispute Resolution Procedures state:

> 4. Expedited Jurisdictional Dispute Resolution Procedures. Once a jurisdictional dispute has been resolved as set forth above, an aggrieved party to a collective bargaining agreement shall be entitled to appeal the resolution pursuant to the following procedures:
>
> (a) All parties hereto agree that the appeal of a jurisdictional dispute shall be conducted by and between the affected Labor Unions claiming jurisdiction over the work and the assigning employer (the "Interested Parties").
>
> (b) Within twenty-four (24) hours of the resolution of such dispute by the PCCA, any Interested Party who disagrees with the resolution may submit the dispute to the Philadelphia Area Labor Management ("PALM") Committee in a written request for mediation.
>
> (c) Within forty-eight (48) hours of receipt of the written request for mediation, PALM shall communicate with the Interested Parties to explore a resolution of the dispute and shall communicate in writing to all Interested Parties whether the dispute has been resolved and, if resolved, the outcome.
>
> (d) If the mediation process has not resolved the dispute, any Interested Party may appeal the dispute through binding arbitration to one member of a standing arbitration panel. The demand for arbitration shall be submitted to the PCCA, with contemporaneous notice to all Interested Parties, within twenty-four (24) hours of receiving written notice from PALM (...)

In May 2012, the PCC hosted a large convention which featured the exhibition of medical and pharmaceutical machines, some of which were large, sophisticated, and expensive. Work on the convention began on or around May 10, 2012 and concluded on

or around May 26, 2012. Before the show began, the show's manager informed the PCC and the defendant employer that some exhibitors had expressed concern about union carpenters uncrating and recrating their medical and pharmaceutical machines. The exhibitors requested that they be allowed to use their own employees to do so. The employer acquiesced.

On May 22, 2012 the union filed a grievance against the employer for violation of Article 10, Section 7 of the PESCA Agreement. The union claimed that the employer impermissibly assigned work to non-union workers. The parties met on May 30, 2012 to attempt to resolve the grievance. Unable to do so, the employer sent a letter to the PALM committee containing the union's grievance and requesting mediation of the dispute. The PALM process did not resolve the matter, and the employer proceeded to arbitration by filing a demand with the American Arbitration Association ("AAA") on June 12, 2012. The union then submitted a letter to the AAA on June 27, 2012, in which it asserted that the matter did not involve a jurisdictional dispute and thus was not covered by the Expedited Jurisdictional Dispute Resolution Procedures contained in the CSA.

The parties selected Stanley L. Aiges as the labor arbitrator and on November 28, 2012, a hearing was held before him. Aiges issued his Arbitration Award/Opinion on February 25, 2013. He concluded that the matter was a "jurisdictional dispute" under the terms of the CSA and would thus be governed by the Expedited Jurisdictional Dispute Resolution Procedures. He further ruled that the employer erred in not assigning the

disputed work to the union's employees and directed the employer to assign such work to the union in the future. However, he denied the union's request for monetary relief based on the CSA's limitation on non-prospective relief. The union then filed suit in this court on March 29, 2013. As noted above, both parties have moved for summary judgment.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004). When ruling on a motion for summary judgment, we may only rely on admissible evidence. See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999).

The standard of review for a labor arbitration award is exceptionally narrow. United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 37 (1987); United Industrial Workers v. Gov't of the Virgin Islands, 987 F.2d 162, 170 (3d Cir. 1993). Courts are not permitted to reconsider the merits of a labor arbitration award, even if the award rests on errors of law or fact, due to the

underlying federal policy that favors settling labor disputes by arbitration. Misco, 484 U.S. at 36. As long as an award "draws its essence" from the agreement being interpreted, the court is required to uphold the award. Brentwood Med. Assocs. v. UMW, 396 F.3d 237, 241 (3d Cir. 2005). "An award draws its essence from a collective bargaining agreement if its interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." Id. (citations omitted). A court may not disturb the award of an arbitrator "simply because it disagrees with the arbitrator's construction of the contract... or because it believes its interpretation of the contract is better..." News Am. Publ'ns, Inc. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990).

The union argues that the terms of the CSA clearly and unambiguously limit "jurisdictional disputes" to disputes between different unions, not to disputes between a union and an employer. According to the union, the parties' intent is clearly evidenced by the fact that they used the word "unions" in the plural as opposed to "union" in the singular. The union further contends that the arbitrator disregarded the clear language of the CSA and essentially rewrote the agreement by using a "result-oriented approach" and erroneously relying on precedent from the National Labor Relations Board ("NLRB").

The employer counters that the arbitrator's award did not disregard the language of the CSA. The employer maintains that the arbitrator carefully considered both sides' arguments

regarding the language of the agreement and its interplay with the PESCA agreement. According to the employer, the arbitrator looked to the entire CSA, not just an isolated phrase, to determine that its language did not limit the dispute procedure to a dispute between two unions but encompasses the type of dispute at issue here.

The employer cites two arbitration decisions involving similar facts to support its position that "jurisdictional dispute" encompasses the situation present here. In those cases, the arbitrators applied the Jurisdictional Dispute Resolution Procedures despite the fact that, as here, the dispute was between a union and an employer. The arbitrator fully considered these precedents. Moreover, he considered the definitions section of the CSA, which defines "Labor Unions" as "The Unions, collectively and individually." Finally, the arbitrator considered NLRB precedent applying Section 10(k) of the National Labor Relations Act. The NLRB chose to interpret "jurisdictional disputes" broadly, as defendant urges, and treat a dispute between a union and an employer in the same manner as it treats a dispute between two unions. See Local 3, Intl. Brotherhood of Electrical Workers, AFL-CIO v. Telecom Equip. Corp., 266 NLRB 714 (1983).

The union meanwhile fails to point the court to any authority that would support its position that "jurisdictional dispute" is confined to disputes between labor unions. Nor does the union provide any authority for its argument that the arbitrator's interpretation is so far outside the language of the

CSA such that it fails to draw its essence from the agreement. The union instead urges the court to second-guess the arbitrator's reasonable interpretation of the CSA's language in reaching his decision.

Given the narrow standard of review we must apply in this case and the reasonableness of the decision reached by Arbitrator Aiges, we conclude that the arbitration award indeed draws its essence from the CSA. As such, we decline to disturb the award. The motion of plaintiff Metropolitan Regional Council of Carpenters, Southeastern Pennsylvania, State of Delaware and Eastern Shore of Maryland for summary judgment will be denied and the motion of defendant Elliot-Lewis Corporation for summary judgment for confirmation of the arbitration award will be granted.